Gibson, J.
In Ohio, if, upon a motion to direct a verdict, the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any essential issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, it should direct a verdict against him and not allow the jury to speculate upon the question. Hamden Lodge v. Ohio Fuel Gas Co. (1934), 127 Ohio St., 469; 52 Ohio Jurisprudence (2d), 618, Trial, Section 121, and cases cited therein. The test then of whether the directed verdict in the instant case was proper is whether reasonable minds could reasonably reach different conclusions on the evidence of record.
*370 In applying the test, it first is necessary to ascertain the facts which must be proved by the plaintiff in order to establish her canse of action. This involves an examination and interpretation of the donble-indemnity provision in policy No. P657925 on the life of the deceased, which reads in pertinent part as follows:
11 If the death of the insured occurs before default in payment of premium and before the first anniversary of the date of this policy which follows the age of 70 years, and such death results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means within 90 days of the occurrence of such accident, and if such accident is evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning and internal injuries revealed by an autopsy) and if such death does not result from suicide, while sane or insane, nor from military or naval service in time of war, nor from an aeronautic flight or submarine descent, not directly or indirectly from disease in any form * * (Emphasis supplied.)
It is evident from the language of the double-indemnity provision that the defendant is obligated to pay the additional sum only if certain conditions are shown to have preceded the death of the insured. In sequence of time there first must have been an accident within 90 days of the death in which the insured suffered bodily injuries solely through external, violent and accidental means. The accident must have been evidenced by a visible contusion or wound on the exterior of the body except in case of drowning where internal injuries were revealed by an autopsy. The next step is that the death must have resulted directly and independently of all other causes from the bodily injuries sustained in the accident. Finally, in the context in the circumstances of this case, the death must not have resulted directly or indirectly from disease in any form. These are the elements of the plaintiff’s cause of action. Lack of anyone of these elements forecloses the right to recover.
In Carson v. Metropolitan Life Ins. Co. (1951), 156 Ohio St., 104, this court in a double-indemnity case, where the defendant’s answer alleged suicide, approved of a charge reading as follows:
*371 “ ‘The court instructs the jury that the burden is upon the plaintiff to prove by a preponderance, or the greater weight of the evidence, that the death of the insured occurred as the result, directly and independently of all other causes, of accidental means, and that said death did not occur as the result of suicide or self-destruction, while sane or insane, and should you find that plaintiff has failed to sustain that burden by a preponderance of the evidence, then your verdict must be for the defendant company. The burden never shifts, and although the defendant alleges in its amended answer that the insured’s death resulted from self-destruction there is no burden upon it to prove that fact; instead, the bttrden of proof remains with the plaintiff to establish by a preponderance of the evidence that death did not result from self-destruction.’ ” (Emphasis supplied.)
Except for the fact that in a suicide case the plaintiff has the benefit of a presumption against suicide, we see no reason why the burden of proof should be different in a disease case from that in a suicide case. We believe it is reasonable to require the plaintiff to show that she comes within the scope of the contract provision by proving, where relevant, that death was not caused, directly or indirectly, by disease. See Hull v. Metropolitan Life Ins. Co. (1941), 34 Ohio Law Abs., 236.
The remaining question is whether the plaintiff met her burden of proof by evidence that the insured’s death was caused proximately by bodily injuries and not directly or indirectly from disease in any form. After hearing all of plaintiff’s evidence, the trial court concluded that the plaintiff had not proved her case. The Court of Appeals reviewed the record and reached the same conclusion. We have listened to arguments of counsel and carefully reviewed the entire record and reach the same conclusion.
Although five medical witnesses testified for the plaintiff, in only two instances did the plaintiff’s counsel or a witness ever refer to injury as a cause of death. At pages 154 and 155 of the record on direct examination, the pathologist testifying as an expert for the plaintiff, on the basis of the autopsy conducted and the report prepared by another physician, was asked:
*372 “Q. Doctor, yon testified a few moments ago that in your opinion the coronary insufficiency was caused by the accident. Now, do yon really mean the accident, or the injury sustained in the accident?
urn * *
“A. I mean the accident.”
At page 163 of the record, the family physician, who had last seen the insured approximately three weeks before his death and had not conducted the autopsy but was giving his interpretation of the autopsy report prepared by another physician, was asked:
“Q. Doctor, then yon would say that the injury or the automobile accident was the primary cause of death on that date?
i ( # # *
“A. Yes.”
The pathologist testifying for the plaintiff clearly testified that the coronary insufficiency which caused the death was caused by the accident and not the injury, and the family physician’s single answer was not responsive to the double question asked.
All other medical testimony offered by the plaintiff went to the question of whether there was a causal relationship between the accident and death or the insured’s heart disease and his death. On oral argument before this court, counsel for the plaintiff said he treated “accident” and “injury” as synonymous.
There is no denial that there was a causal relationship between the accident and the insured’s death. This, however, is not the causal relationship required by the insurance contract. In fact, defendant contends, and the plaintiff’s proof bears out the contention, that the insured experienced emotional upset, nervousness and excitement upon the happening of the automobile accident; that with such emotional change his heartbeats became more rapid and irregular, all of which would be expected in view of the pre-existing ventricular excitability and other heart disease; and that this change in the heart rhythm progressed to the point of the pre-existing ventricular extrasystoles, ventricular fibrillation, heart stoppage and death.
*373 On the basis of a review of the entire record, we are of the opinion that the Court of Appeals was not in error in concluding that, after construing the evidence most strongly in favor of the plaintiff, reasonable minds could come to but one conclusion and that conclusion is adverse to the plaintiff. Accordingly, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Taet, C. J., Zimmerman, Matthias, O’Neill and Grieeith, JJ., concur.
Herbert, J., dissents.